IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MCKENNA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | NO. 98-5835 |

| | | |
|---|---|---|
| MYRNA MOORE, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | NO. 99-1163 |

MEMORANDUM AND ORDER

McLaughlin, J.                                    May 15, 2007

          The plaintiffs in these two related cases are former
police officers who worked together in the 7-squad of the 25th
District of Philadelphia Police Department in the mid-to-late
1990s:  Michael McKenna (plaintiff in case no. 98-5835) and his
brother William McKenna and Raymond Carnation (plaintiffs in case
no. 99-1163).  All three plaintiffs, who are white, allege that
they suffered discrimination and retaliation because they opposed
a racially hostile work environment and discrimination against
African Americans in their squad.  The defendants are the City of
Philadelphia and certain individual supervisors in the
Philadelphia Police Department.

          These two cases were consolidated for pre-trial
proceedings.  After the close of discovery, and after the

plaintiffs had voluntarily dismissed some of their claims, this Court granted summary judgment in favor of the defendants on the remaining claims on January 17, 2003.  The plaintiffs appealed, and on August 30, 2006, the United States Court of Appeals reversed the grant of summary judgment as to the plaintiffs' Title VII retaliation claims and remanded the two cases for further proceedings.

Now after remand, the three plaintiffs, now represented by new counsel, seek to bring additional claims.  They seek to add retaliation claims against certain individual defendants who have already been dismissed from this action, as well as claims alleging that the retaliation they suffered resulted in their being wrongfully terminated from the police department.  The plaintiffs have used several different procedural vehicles to raise these new issues.  All three plaintiffs have moved to amend their complaints to add § 1983 first amendment retaliation claims against the individual defendants named in their complaints.  In these § 1983 claims, the plaintiffs apparently will seek damages for wrongful termination.  In the alternative, the plaintiffs argue that, even if leave to amend is denied, they should still be allowed to recover damages for their terminations as part of their remaining Title VII retaliation claims against the City.

Plaintiff William McKenna also moves for reconsideration of this Court's October 25, 2001, Order, which

2

denied a previous motion to amend his complaint to add a claim for wrongful termination.  William McKenna has also filed a separate action in this Court, Case No. 06-1705, raising claims for wrongful termination arising out of the same incidents at issue in his suit here.  The defendants in that separate action have moved to dismiss on statute of limitations and other grounds.

In this Memorandum and Order, the Court will address the plaintiffs' motions to amend their pleadings, the plaintiffs' argument that their terminations should be considered in this case as damages, and plaintiffs' motion for reconsideration.  The Court will address the motion to dismiss Case No. 06-1705 in a separate Memorandum and Order.


I.    FACTUAL AND PROCEDURAL BACKGROUND

The Court will not set out in any detail the underlying facts that form the basis for the plaintiffs' claims here.  Those facts are set out at length in both this Court's prior summary judgment decisions and the decision on appeal.  See Moore v. City of Philadelphia, 461 F.3d 331 (3d Cir. 2006), reversing McKenna v. City of Philadelphia, No. 98-5835, 2003 WL 171373 (E.D. Pa. Jan 17, 2003) and the Memorandum and Order of January 17, 2003 in Moore v. City of Philadelphia, No. 99-1163.

Briefly stated, beginning in August 1997, when Raymond Carnation and William McKenna were transferred to the 7-squad where Michael McKenna was already working, the three plaintiffs experienced harassment from their fellow officers.  The plaintiffs have alleged that over the next several months they witnessed several incidents of discriminatory treatment of African-American officers and numerous racially derogatory remarks by their supervisor, Sgt. John Moroney.  The plaintiffs allege that they complained about these incidents to their superiors, and that after these complaints, they suffered retaliation from Sgt. Moroney and others.

The McKenna brothers were transferred out of 7-squad to separate districts in February 1998, while Raymond Carnation remained in the squad until May 1998, when he was given restricted duty at the Police Academy.  Michael McKenna was ultimately discharged by the police department in October 1998. William McKenna was placed on restricted duty from February 1998 through November 1998 and on medical leave from November 1998 through May 1999.  While on medical leave, he was subject to "sick checks" in which a supervisor would visit his home and confirm he was there.  William McKenna was terminated in May 1999 after failing five such checks, and he contends the frequency of these checks increased greatly after he filed suit against the department in March 1999 and constituted one of the ways in which

4

the police department retaliated against him.  Raymond Carnation contends that during the summer of 1998 he was retaliated against by being falsely brought up on disciplinary charges and by having a supervisor intervene in a custody matter concerning his children.  Mr. Carnation also eventually left the police department.

On April 29, 1998, before any of the plaintiffs had been terminated from the police department, the McKennas, Raymond Carnation and three African-American officers filed a complaint with the Pennsylvania Human Relations Commission and the federal Equal Employment Opportunity Commission.  Michael McKenna filed his suit, Case No. 98-5835, on November 4, 1998, bringing a Title VII retaliation claim against the City, a § 1981 claim against the City and the individual defendants for retaliation and a § 1983 claim against the City and the individual defendants for violating Michael McKenna's right to privacy.  On March 5, 1999, William McKenna, Raymond Carnation and the three African-American officers filed a separate suit, Case No. 99-1163, also bringing Title VII retaliation claims against the City and § 1981 retaliation and discrimination claims against the City and the individual defendants, as well as a § 1983 claim against the City and individual defendants for violations of procedural and substantive due process.  Neither of the plaintiff's complaints, either as originally filed or as amended, raised claims

5

concerning the plaintiffs' termination from the police department.

On May 29, 2001, counsel for plaintiff William McKenna wrote the Court requesting permission to amend his complaint to add a claim for wrongful discharge under 42 U.S.C. §§ 1981 and 1983.  The Court treated this letter as a motion to amend, ordered defendants to respond and ultimately denied the motion on October 25, 2001.  The Court found the motion to amend untimely because it was filed more than two years after Mr. McKenna was discharged and was therefore outside the statute of limitations. The Court further held that Mr. McKenna's attempted wrongful discharge claims could not "relate back" to his original filing because neither his original pleadings nor his subsequent filings put defendants on notice of his wrongful discharge claim.

In September 2002, the defendants filed a motion for summary judgment in both cases.  During the briefing, plaintiff Michael McKenna agreed to the entry of summary judgment on all claims as to some of the individual defendants and agreed to the entry of judgment on his § 1981 retaliation claims in favor of all defendants.  Plaintiffs William McKenna and Raymond Carnation also agreed to the entry of summary judgment on all claims as to some of the individual defendants and agreed to judgment as to their § 1981 discrimination and retaliation claims as to all

defendants.  The Court then granted summary judgment on the remaining claims.

In his summary judgment brief, Michael McKenna listed thirteen incidents by the City of Philadelphia that the he contended were adverse employment actions supporting his Title VII retaliation claims.  See McKenna, 2003 WL 171373 at *10.  William McKenna and Raymond Carnation listed nine separate adverse employment actions in their brief.  Memorandum and Order of January 16, 2003 at 29-31.  Neither brief included the plaintiffs' terminations as an adverse employment action at issue in their claims.

The plaintiffs filed a timely appeal from this Court's grant of summary judgment.  The plaintiffs did not raise on appeal the Court's October 25, 2001, denial of William McKenna's motion to amend his complaint to add a wrongful termination claim, nor did they mention their terminations as an adverse employment action supporting their retaliation claims.  See Brief of Appellants, Appeal Nos. 03-1465, 03-1473 at 36-40 (filed February 21, 2006).

The United States Court of Appeals for the Third Circuit granted the plaintiffs' appeal on August 13, 2006.  The court found that the plaintiffs had presented sufficient evidence to show "genuine issues of material fact as to whether they suffered retaliation made unlawful by Title VII" and remanded the

case for further proceedings.  <u>Moore</u>, 461 F.3d at 352.  Although

the <u>Moore</u> decision mentions the plaintiffs' terminations in its

recitation of facts, it does not mention the terminations in its

legal analysis or include them in its discussion of the alleged

retaliatory acts taken against the plaintiffs.


II.  <u>LEGAL ANALYSIS</u>

      In their submission to the Court, the plaintiffs seek

1) to amend their complaints to add a § 1983 claim against the

individual defendants asserting retaliation in violation of the

First Amendment; 2) to be permitted to recover compensation for

their terminations as part of their damages on their existing

Title VII claim against the City; and 3) to have the Court

reconsider its October 25, 2001, Order denying William McKenna

leave to amend his complaint to add a § 1983 wrongful termination

claim.  The Court will deny these requests.


    A.   <u>The Identity of the Defendants Remaining After Remand</u>

      Before turning to the merits of the plaintiffs'

motions, the Court must first determine which defendants remain

in this case after remand.  In their brief, the defendants argue

that only the City of Philadelphia remains as a defendant because

the Court of Appeals remanded only the plaintiffs' Title VII

claims for further consideration by this Court, and those claims

8

were asserted only against the City.  The plaintiffs disagree,
arguing in their reply brief that their § 1983 claims against the
City and certain individual defendants remain in the case after
remand.

The decision of the Court of Appeals remanding this
case does not directly address the issue, referring to the claims
of the individual defendants only in a footnote:

> While the plaintiffs' supervisors are before
> us as appellees, they make no argument in
> support of the judgment in their favor which
> is independent of the grounds for affirmance
> advanced by the City.  Accordingly, we will
> address only issues relating to the Title VII
> liability of the City.

Moore, 461 F.3d at 340 n. 2.  Taken out of context, this footnote
could be interpreted as saying that the appellate decision
resolved the claims against the individual defendants in the same
way and on the same grounds as it did the Title VII claims
against the City.  Understood in context, such an interpretation
would be unsound.

At the time this Court granted the defendants summary
judgment, the only claims remaining in the case were the
plaintiffs' Title VII claims against the City and their § 1983
claims against the City and certain individual defendants.  The
two sets of claims arose out of separate facts.  The plaintiffs'
Title VII claims arose out of a alleged months-long pattern of
retaliatory behavior, including disciplinary actions taken

9

against the plaintiffs and their transfers to other departments.
Michael and William McKenna's § 1983 claims arose out of
allegations that their First Amendment rights were violated when
Police Department's Ethics Accountability Division sent the
McKenna's interview notices concerning an investigation into
corruption via teletype, which could be seen by other officers,
in violation of the Division's promise of confidentiality.  In
addition, William McKenna and Raymond Carnation alleged
unspecified § 1983 violations of their right to due process.  See
McKenna, 2003 WL 171373 at *11-12; Memorandum and Order of
January 16, 2003 at 36-38.

    This Court granted summary judgment to the defendants
as to the Title VII claims and the § 1983 claims on separate and
independent grounds.  The Court dismissed the plaintiffs' Title
VII claims for failure to establish a prima facie case of
retaliation, finding that the plaintiffs had failed to show that
they had engaged in protected activity; that most of the
incidents of which the plaintiffs complained did not constitute
an adverse employment action; and that, for those incidents that
could be adverse employment actions, the plaintiffs had failed to
show a causal link between the actions and their protected
activity.  The Court dismissed the § 1983 First Amendment claims
because the information disclosed was not sufficiently intimate
and personal for disclosure to violate the First Amendment and

because the disclosure was not made pursuant to a policy or
custom as required for liability against the City.  The Court
dismissed the § 1983 due process claims because the plaintiffs
failed to brief them in their opposition to summary judgment.
See McKenna, 2003 WL 171373 at *11-12; Memorandum and Order of
January 16, 2003 at 36-38.

Because of these differences between the plaintiffs'
Title VII and § 1983 claims and the separate grounds on which
summary judgment was granted as to them, the Court's
understanding of the decision of the Court of Appeals is that the
claims against the individual defendants remain dismissed and
that the only claims remanded to this Court are the Title VII
claims asserted against the City.  On appeal, the plaintiffs'
brief focused exclusively on the Title VII claims, and, as the
appellate footnote explains, so did the brief of the defendants.
Accordingly, because the parties failed to brief the § 1983
claims, the Court of Appeals declined to address them, which this
Court understands to mean that the grant of summary judgment as
to those claims was left undisturbed.  See United States v.
Pelullo, 399 F.3d 197, 222 (3d Cir. 2005) ("an appellant's
failure to identify or argue an issue in his opening brief
constitutes waiver of that issue on appeal").  The interpretation
of the Moore decision advanced by the plaintiffs – that the
appellate decision reversed this Court's grant of summary

11

judgment on the § 1983 claims without analyzing the basis for that judgment and without expressly stating it was doing so – is untenable.

    B.   <u>Plaintiffs' Motion to Amend</u>

       The plaintiffs seek to amend their complaint "to assert a [§] 1983 First [A]mendment retaliation claim against the individual defendants." Plaintiffs' Brief on the Scope of the Remaining Issues for Trial ("Pl. Br.") at 1. The plaintiffs argue that they need to add these claims "to provide a vehicle to impose liability against the individual defendants," who otherwise cannot be held liable under the remaining Title VII claim brought only against the City of Philadelphia. <u>Id.</u> at 2. As part of these proposed § 1983 retaliation claims, the plaintiffs will seek to recover damages for their wrongful termination. <u>Id.</u>[1]

---

[1] The plaintiffs have failed to provide the Court with a draft of their proposed amended complaint, and their submission to the Court provides no more detail concerning the claims to be added than the sentences quoted above. This alone justifies denying the plaintiff's request to amend. <u>See</u> <u>Lake v. Arnold</u>, 232 F.3d 360, 374 (3d Cir. 2000) (holding plaintiff's "failure to provide a draft amended complaint would be an adequate basis on which the court could deny the plaintiff's request" to amend) The Court will not rest its decision to deny the requested amendment solely on this ground, however, because even from the sketchy information provided, the Court can determine that the requested amendment would be futile and would cause undue delay and undue prejudice to the defendants.

Under Rule 15(a) of the Federal Rules of Civil Procedure, the plaintiffs can amend their complaint in these circumstances only by leave of court, but such leave "shall be freely given when justice so requires."  Grounds that justify denying leave to amend include "undue delay, bad faith, dilatory motive, prejudice, and futility."  <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000).  Here, the Court finds the plaintiffs' proposed amendments would be both futile and would cause undue delay and prejudice.[2]

1.  <u>Futility</u>

In determining whether an amendment would be futile, a court must apply the same standards applicable to a motion to dismiss.  <u>Id.</u>  The Court must therefore take all allegations in the proposed amendments as true and determine whether the plaintiffs could recover under any set of facts that could be

---

[2]  The defendants argue that the plaintiffs should be precluded from attempting to amend their complaint under the "law of the case doctrine," citing <u>Skretvedt v. E.I. Dupont de Nemours</u>, 372 F.3d 193 (3d Cir. 2004).  <u>Skretvedt</u>, holds that, after remand, a party will be deemed to have waived any argument that could have been raised in a prior appeal.  <u>Id.</u> at 203.  <u>Skretvedt</u> also notes, however, that a district court after remand "may consider, as a matter of first impression, those issues not explicitly or implicitly disposed of by the appellate decision."  <u>Id.</u> at 203 n.13 (internal quotation and citation omitted).  Because the plaintiffs have not previously moved to amend their complaint to add § 1983 first amendment retaliation claims, the propriety of such an amendment was not addressed in the appeal and can be considered by this Court as an issue of first impression.

proved.  <u>Baraka v. McGreevey</u>, 481 F.3d 187, 195 (3d Cir. 2007).
Applying this standard, the Court finds that the plaintiffs'
proposed amendments would be futile because they are barred by
the applicable statute of limitations.

      The statute of limitations for the § 1983 claims that
the plaintiffs seek to add is two years.  <u>Smith v Holtz</u>, 87 F.3d
108 (3d Cir. 1996) (citing 42 Pa. Cons. Stat. Ann. § 5524).  The
alleged retaliation that is the basis for these claims took place
in 1997 and 1998, over eight years before plaintiffs moved to
amend.  To avoid the statute of limitations, the plaintiffs argue
that these claims relate back to the plaintiffs' original timely
filed complaint.

      Whether claims "relate back" to an original filing is
governed by Rule 15(c).  Rule 15(c)(2) provides that an amendment
will relate back to the date of the original pleading when "the
claim or defense asserted in the amended pleading arose out of
the conduct, transaction or occurrence set forth or attempted to
be set forth in the original pleading."  Rule 15(c)(3) governs
situations where a proposed amendment corrects the
misidentification of an existing party or substitutes or adds a
new party.  <u>Arthur v. Maersk, Inc.</u>, 434 F.3d 196, 209 (3d Cir.
2006).  In such cases, the party proposing the amendment must
show 1) that the amended claims arise out of the same conduct,
transaction, or occurrence as the original pleading; 2) that

14

within 120 days of institution of the action, the party to be brought in by amendment must have received "such notice of the ... action that the party will not be prejudiced in maintaining a defense on the merits"; and 3) that within 120 days of institution of the action, the party to be brought in by amendment must have known or should have known that, "but for a mistake concerning the identity of the proper party," the action would have been brought against that party.  Id. at 207, citing Fed. R. Civ. P. 15(c)(3).

        Here, in order for the proposed amendments to "relate back," the plaintiffs must meet the requirements of Rule 15(c)(3) The proposed amendments seek to add claims against the individual defendants originally named in the plaintiffs' complaint.  As discussed elsewhere in this Memorandum, neither of the two claims that the plaintiffs originally asserted against the individual defendants remain in this case.  The plaintiffs voluntarily dismissed their § 1981 retaliation and discrimination claims against the individual defendants in 2002 after the defendants moved for summary judgment, and the plaintiffs' § 1983 claims were not remanded to this Court after the plaintiffs' appeals.  Because the individual defendants are no longer in this case, the effect of the proposed amendments will be to add additional parties and therefore Rule 15(c)(3) must be satisfied for those amendments to relate back.

In analyzing whether the three requirements of Rule 15(c)(3) are met, the Court need not consider the first two because it is clear that the plaintiffs cannot meet the third. The plaintiffs cannot show that the individual defendants must have known or should have known within 120 days of the original complaints being filed that, "but for a mistake concerning the identity of the proper party," the action would have been brought against that party.  Here, there was no mistake concerning the identity of the individual defendants.  These defendants were known to the plaintiffs and were, in fact, named in the original action.  The plaintiffs' motion to amend offers no explanation as to why the § 1983 First Amendment retaliation claims they now seek to add could not have been asserted against the individual defendants when these cases were originally filed in 1998 and 1999.  In the absence of any "mistake concerning the identity of the proper party" to sue, there can be no relation back under Rule 15(c)(3).  Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186, 200-01 (3d Cir. 2001).  The plaintiffs' proposed amendments to the complaint would therefore be futile because the claims sought to be added are time-barred.[3]

---

[3] Although the plaintiffs repeatedly describe their proposed amendment as one to add a § 1983 First Amendment retaliation claim against the individual defendants, at one point in their briefing, they refer to the claim to be added as a "section 1983 first amendment retaliation claim against the City and the individual defendants."  Pl. Br. at 1 (emphasis added). If the plaintiffs are, in fact, seeking to assert such a claim

2.    <u>Undue Delay and Prejudice</u>

The plaintiffs' proposed amendments must also be denied on grounds of undue delay and prejudice.  Mere delay alone is not enough to deny leave to amend, but "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party."  <u>Arthur</u>, 434 F.3d at 204 (quoting <u>Adams v. Gould Inc.</u>, 739 F.2d 858, 868 (3d Cir. 1984)).  Determining whether delay is undue focuses on a movant's reasons for not amending sooner;  determining whether it is prejudicial focuses on the effect of delay on the non-movants.  <u>Adams</u> at 868.

A plaintiff's delay in moving to amend may become unreasonable if the plaintiff could have plead its amendments earlier and if there are no new facts or an intervening change of

against the City of Philadelphia, then that claim, unlike those
asserted against the individual defendants, would relate back to
the original complaint and would not be time-barred.  Because the
City is currently a defendant in this case, adding additional
claims against it would not involve changing the name or identity
of a party and so would not be required to satisfy Rule 15(c)(3).
Instead, such claims would relate back if they arose out of the
same conduct, transaction, or occurrence as the original
pleading, as required by Rule 15(c)(2).  At least as to the
alleged retaliatory acts not involving the plaintiffs'
termination, this requirement would be met because the proposed
§ 1983 claim and the Title VII claims in the original complaint
both arise out of the same events.  Although an amendment to add
a § 1983 retaliation claim against the City would not be time-
barred, leave to amend to add such a claim would still not be
warranted.  As set out below, even if this particular aspect of
the plaintiffs' proposed amendment would not be futile, the
amendments must still be denied because they will cause undue
delay and prejudice.

law to justify the failure to act sooner.  See Lorenz v. CSX
Corp., 1 F.3d 1406, 1414 (3d Cir. 1992) (a three year delay
between filing a complaint and moving to amend was unreasonable
where the plaintiffs had "numerous opportunities" to amend
earlier).  Here, the plaintiffs admit that there have been no new
facts to justify moving to amend now.  Their proposed § 1983
retaliation claims are based on the same evidence as the § 1981
retaliation claims in their original complaints.  The plaintiffs
suggest that there has been a change in the law of retaliation
since the plaintiffs filed their original complaints, but they do
not explain why this change explains their delay.

        The change in law that the plaintiffs point to is
Burlington Northern and Santa Fe Ry. Co. v. White, 126 S. Ct.
2405 (U.S. 2006).  In that case, the United States Supreme Court
clarified that the "adverse employment action" necessary to make
out a Title VII retaliation claim need not be something that
alters an employee's terms and conditions of employment, but
instead need only be "materially adverse" such that the
retaliatory action might have dissuaded a reasonable worker from
making or supporting a charge of discrimination.  Id. at 2412-15.
It is not clear whether Burlington Northern's ruling concerning
Title VII claims will apply to the plaintiffs' proposed § 1983
claims, but even if it does, it does not excuse the plaintiffs'
delay.  Burlington Northern's broadened definition of "adverse

employment action" is not necessary for the plaintiffs to bring their claims.  The alleged retaliatory acts at issue in the plaintiffs' claims, including disciplinary action against them and their involuntary transfer and wrongful termination, involve changes to their terms and conditions of employment and would have constituted "adverse employment actions" even under the older, narrower, pre-Burlington Northern definition of the term. Because there has been no change in facts or law to justify the plaintiffs' delay in moving to amend, and because the plaintiffs' proposed new claims could have been brought in their original complaint, the plaintiffs' almost nine year delay in moving to amend is unreasonable.

        In addition to causing undue delay, allowing the plaintiffs to amend their complaint now will prejudice the defendants.  Discovery in this case was complete when summary judgment motions were filed in 2002.  If leave to amend is granted, discovery will almost certainly need to be reopened.  As part of the new § 1983 cause of action they seek to assert, the plaintiffs want to recover damages for their "termination and loss of front and back pay."  Pl. Br. at 3.  These new issues will likely require additional discovery into the circumstances of the plaintiffs' terminations and additional expert testimony to quantify the plaintiffs' claimed loss of pay.

At this late stage of this litigation, allowing the plaintiffs to amend would "result in additional discovery, cost, and preparation to defend against new facts or new theories." Cureton v. National Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001) (upholding denial of leave to amend where new claims would "lead to further discovery requests and significant new preparation). Given that this case is otherwise ready to proceed to trial, the plaintiffs' eleventh-hour request to interject new claims and new damage theories into this case will be denied as prejudicial.

C    Plaintiffs' Terminations as Damages

The plaintiffs argue that, even if their motion to amend is denied, they can still recover for their wrongful termination as part of their damages for the existing claims in their complaint. The plaintiffs' terminations, however, have not up to now been part of this case. Neither of the plaintiffs' complaints brought claims based on their terminations. The plaintiffs did not list their terminations as one of the retaliatory adverse employment actions taken by their employer in either their summary judgment briefing or their briefing on appeal. Plaintiff William McKenna previously moved to add a claim for wrongful termination to his suit in 2001, but his motion was denied.

20

To the extent that the plaintiffs now wish to pursue damages for their wrongful termination, even as part of their existing claims, they will need to show that pursuing these new claims will not cause undue or prejudicial delay.  As discussed above in the context of the plaintiffs' motion to amend, allowing the plaintiffs to pursue damages for wrongful termination at this point in this case will prejudice the defendants and unduly delay this litigation, which is otherwise ready to go to trial.  Given that the plaintiffs could have raised the issue of their terminations at any point earlier in this litigation, the Court will deny the plaintiffs' request to add them now.

D.   Plaintiffs' Motion for Reconsideration

The plaintiffs have moved for reconsideration of the Court's October 25, 2001, Order, denying William McKenna's motion to amend his complaint to add a claim for wrongful termination. The plaintiffs' motion is untimely.  It is untimely under Local Rule 7.1(g), which requires such a motion be filed within ten days of the order for which reconsideration is sought.  It is also untimely because the plaintiffs had an opportunity to have the propriety of the Court's October 25, 2001, Order reviewed by the Court of Appeals, but failed to argue the issue during the briefing of their appeal.  Under the law of the case doctrine,

matters that could have been raised in an appeal are waived upon remand.  Skretvedt, 372 F.3d at 203.

        Even if considered on the merits, the plaintiffs give no grounds for reconsideration.  The only basis for reconsideration advanced by the plaintiffs is that Burlington Northern constitutes an intervening change in controlling law that justifies a different disposition for William McKenna's motion to amend.  As discussed above, Burlington Northern expanded the definition of an "adverse employment action" in a Title VII retaliation claim from an action that altered the terms and conditions of employment to an action that was "materially adverse" and that might have dissuaded a reasonable worker from bringing a claim of discrimination.  Id. at 2412-15.  William McKenna's motion to amend, however, was not denied because his claim failed to meet the definition of an adverse employment action.  His motion was denied because the wrongful termination claims he sought to add were time-barred.  Burlington Northern does not change this result, and the plaintiffs' motion for reconsideration will be denied.


III.  CONCLUSION

        For the reasons above, the Court will deny the plaintiffs' motions to amend their complaints; their request to include their terminations as an element of damages in their

22

existing Title VII claim; and their motion for reconsideration of this Court's October 25, 2001, Order.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL MCKENNA                  :    CIVIL ACTION
                                 :
            v.                   :
                                 :
CITY OF PHILADELPHIA, et al. :    NO. 98-5835

MYRNA MOORE, et al.              :    CIVIL ACTION
                                 :
            v.                   :
                                 :
CITY OF PHILADELPHIA, et al. :    NO. 99-1163


ORDER

         AND NOW, this 15th day of May, 2007, upon consideration
of the issues raised in the Plaintiffs' Brief on the Scope of
Issues Remaining for Trial and Motion for Reconsideration fo the
Order Denying a Wrongful Termination Claim (Docket # 95 in
McKenna; Docket # 114 in Moore), and the Defendant City of
Philadelphia's Brief on the Scope of Issues Remaining for Trial
(Docket # 94 in McKenna; Docket # 113 in Moore), and the
responses thereto, IT IS HEREBY ORDERED that, for the reasons set
forth in the accompanying Memorandum:

         1)  The plaintiffs' motion to amend the complaints in
these matters is DENIED;

         2)  The plaintiffs' request to recover damages for the
plaintiffs' alleged wrongful termination as part of the existing
claims in these complaints is DENIED;

3) The plaintiffs' motion for reconsideration of the Court's October 25, 2001, Order is DENIED;

4) The Court will hold an on-the-record telephone conference with counsel for the parties on Wednesday, May 30, 2007, at 4:00 p.m. to discuss scheduling the trial in this matter.  Plaintiffs' counsel shall initiate the call.  Chambers' telephone number is 267-299-7600.

BY THE COURT:


/s/ Mary A. McLaughlin
MARY A. McLAUGHLIN, J.

2